DIXON, Chief Justice.
John D. Floyd was indicted for two counts of second degree murder, the first count for the murder of William Hines, Jr., and the second count, for the murder of Rodney Robinson. He was ultimately tried by a judge alone, convicted for the second degree murder of Hines, and found not guilty of the murder of Robinson. He was, in due course, sentenced, and now appeals, arguing four assignments of error.
On November 26,1980, William Hines, Jr. was discovered lying beside his bed in his apartment, nude, dead from multiple stab wounds. On November 29, 1980, the body of Robinson was discovered in the hallway of a New Orleans hotel, nude, stabbed to death.
Police investigation developed similar factors in the two killings. Both victims were homosexuals. Scientific examinations of one of the victims and his room revealed recent sexual activity. Hines’ apartment revealed no signs of struggle, no evidence of burglary, and no evidence that the apartment had been entered by force. Hines’ clothes were found neatly draped over a chair. Since the body of Hines was discovered approximately thirty-six hours after his death, scientific examination of the body revealed no clue; background information, however, disclosed that Hines had been an active homosexual. Investigating police theorized that the two homicides were linked and that one individual might have committed both crimes.
*994 The police learned that a man called “Crazy Johnny” had made statements which linked him with the killings. One of the investigating policemen was familiar with the man called “Crazy Johnny,” but did not know his name. Two French Quarter residents who also knew “Crazy Johnny” selected John D. Floyd’s photograph from a picture lineup presented by the New Orleans police. One of those persons, Stephen Edwards, who identified the defendant as “Crazy Johnny,” operated a French Quarter bar. He related to police an encounter with Floyd on the sidewalk near Edwards’ establishment. Edwards warned Floyd not to enter Edwards’ bar because Floyd had been banned from the bar for recent disruptive behavior. Floyd, according to Edwards, then told Edwards to leave him alone, that “I already wasted one person.” Edwards then asked if the victim had been the man who lived around the corner (Hines) and Floyd answered, “Yeah. On Governor Nicholls.”
Another witness, Gerald Griffin, had accompanied Floyd to the detoxification unit in New Orleans Charity Hospital on the morning of November 29, 1980. On this occasion, Floyd had asked Griffin if Griffin knew about the hotel killing (which had just occurred on November 29). Floyd then stated that people who were hospitalized as mentally ill were sometimes found not to be responsible for their actions. After the trip to the hospital, Griffin saw an account of the hotel killing and reported his conversation with Floyd to the police, believing that it might have revealed a connection between Floyd and the Robinson killing.
A search of French Quarter bars finally led Detective Dillman and Officer Reilly to Floyd at a bar called “The Louisiana Purchase.” These policemen had a drink with Floyd, talked with him for twenty minutes or so, asked him to come outside, handcuffed him, walked him a few blocks to the officers’ automobile, and carried him to police headquarters, where Floyd confessed.
Floyd gave two confessions, one to the murder of Hines and one to the murder of Robinson. Since he was found not guilty of the murder of Robinson (evidence showed that Robinson’s assailant had been a black man with Type A blood; Floyd is white with Type B blood), there are no issues before us in that case.

Assignment of Error No. 1

This assignment relates to the denial of motions to suppress the confession. The confession was attacked as having been coerced, fabricated, and the product of an illegal arrest for which there was no probable cause.
The defendant claimed that he had been beaten during his interrogation, that he had been struck and kicked and that his head had been split open and was bleeding.
The police denied the use of any force. Pictures were introduced which apparently showed no evidence of the beating described by the defendant. A news photographer testified, and his pictures were introduced. The photographer saw no evidence of violence having been used upon the defendant, and his photographs apparently disclosed none.
The evidence showed that the defendant first denied any knowledge of the killing, explained his public bragging about killing to have been mere exhibitionism, but eventually began to weep, when the officers probed his drug abuse, and confessed.
The officers had taken Floyd in custody at 5:00 p.m. When the arresting officers had been told enough by Floyd to confirm their belief that Floyd was guilty of the two murders, they sent for Detective Rice, to whom the Robinson case had been assigned. While they waited in the detective headquarters, they sent for a supper of fried chicken, and sent for some chewing tobacco at Floyd’s request. Floyd and the police ate their evening meal together, after which Floyd gave two separate written statements, which were typed by the police officers as Floyd answered their questions. The first was a confession to the murder of Hines, the second to the murder, of Robinson.
*995 There was clearly probable cause for the arrest of the defendant Floyd. He had been identified as the “Crazy Johnny” who had bragged in French Quarter bars about having killed the two men, and who had made statements to Edwards that he had killed Hines and to Griffin a statement which indicated a connection to the murder of Robinson. Both victims were homosexuals. The investigation of Floyd showed that he was homosexual, that he picked up sexual companions in bars, had no regular place of abode, and, as a practice, exchanged homosexual relations for places to stay.
Murder had been committed. Floyd claimed to have killed one victim and made statements which connected him with the other victim. There was no lack of probable cause for the warrantless arrest.
The state bore its burden of proving that the confession was free and voluntary, and not forced by fear, duress, inducements or promises. The defendant was thoroughly and adequately advised of his constitutional rights. He was not intoxicated at the time the confessions were given. He was able to understand the warnings, and that the statements would be used against him.
There was no error in the ruling of the trial judge in denying the motion to suppress, and admitting the confession into evidence.

Assignment of Error No. 2

Defendant asserts that the trial court erred in finding that there was sufficient evidence to convict him of Hines’ murder.
The evidence against the defendant consisted of his confession in which he described the killing of Hines. He had bragged publicly about the killing. Homosexual activity brought the victim and the defendant together. He had threatened another witness, one of his sexual partners who had refused to give him money, that he would “take care” of him “like I did the one at the hotel.”
This assignment of error lacks merit.

Assignment of Error No. 3

This assignment of error complains of the denial of a motion for a new trial, for reasons discussed in Assignments of Error Nos. 1 and 2, and lacks merit.

Assignment of Error No. 4

Defendant contends that the trial court erred in refusing to allow him to question Detective Rice regarding past cases where confessions he had obtained from suspects were suppressed due to his misconduct.
Evidence is admissible in a criminal case only if it is relevant to a material issue. R.S. 15:435. Relevant evidence is defined in R.S. 15:441 as:
“... that tending to show the commission of the offense and the intent, or intending to negative the commission of the offense and the intent.
Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible.”
Although the prior record of a police officer regarding his misconduct may be relevant, the past conduct of Detective Rice was not relevant to the admissibility of Floyd’s confession to the murder of Hines. Floyd testified that he was beaten and threatened by Detective Dillman during the period he and Dillman, were alone. Rice did not arrive at the homicide office until approximately 7:30 p.m., after Floyd had indicated that he wanted to confess to both the Hines and the Robinson murders. Rice was present when the written statements were taken from Floyd. It therefore appears that Rice was not only absent when Floyd originally confessed to Dillman and Officer Reilly, but he was also not present during the time period Floyd claims that he was beaten and threatened. Accordingly, any evidence of Rice’s past misdeeds would have no relevance to the admissibility of Floyd’s confession in the Hines case.
*996 Evidence of prior misconduct on the part of Rice is not relevant to a material issue in this case, since only the admissibility of the confession to the Hines murder is at issue. The admissibility of the confession to the Robinson murder is not at issue in this case; defendant has been acquitted of the Robinson murder.
For these reasons, the conviction and sentence of the defendant, John D. Floyd, are affirmed.